**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MANUEL GUADIAN,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **EP-23-CV-00349-KC** |
| | § | |
| **UNITED TAX DEFENSE LLC,** | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Manuel Guadian's ("Plaintiff") "Motion for Default Judgment" (ECF No. 9), filed on December 6, 2023.  On the same day, United States District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment be **GRANTED**.

### I.       FACTUAL BACKGROUND

This case arises from alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Plaintiff asserts that he received eight text and voice messages from Empower People, an offshore telemarketing company, over the course of August 25, 2023, to September 12, 2023.  Pl.'s Original Compl. ¶ 43, ECF No. 1.

Plaintiff has maintained his personal cell phone number, ending in -8351, on the National Do-Not-Call Registry since April 6, 2023.  *Id.* at ¶ 24.  Plaintiff's cell phone is used for residential purposes.  *Id.* at ¶ 91.

Plaintiff states that he "received a text message to his personal cell phone" from Empower People on August 25, 2023.  *Id.* at ¶ 31.  The text message offered debt relief services and was from the number 339-220-6538, with a callback number of 234-282-0292.  *Id.*  Plaintiff then asserts that he received five prerecorded voice messages, also from Empower People, over the course of August 28, 2023, to September 7, 2023.  *Id.* at ¶¶ 32, 43.  These voice messages were from various phone numbers, but all used exactly the same language: "Important notification, Empower People has a crucial message regarding a financial assistance account.  You have been pre-approved for a financial assistance program."  *Id.*  Plaintiff asserts that he received two more text messages from Empower People regarding debt relief services to his personal cell phone on September 11 and 12, 2023.  *Id.* at ¶¶ 33–34.  These text messages came from different numbers and provided different callback numbers.  *Id.*

On September 12, Plaintiff called Empower People and expressed interest in its financial assistance services to find out on whose behalf the calls were made.  *Id.* at ¶¶ 35–36.  The representative from Empower People informed Plaintiff that he would transfer Plaintiff to a "senior tax advisor."  *Id.* at ¶ 36.  Plaintiff states that he was then transferred to a representative from Defendant United Tax Defense LLC ("Defendant").  *Id.* at ¶¶ 37–39.  Plaintiff received an email containing Defendant's company information from this representative.  *Id.* at ¶ 40.

## II.     PROCEDURAL HISTORY

On September 15, 2023, Plaintiff filed his Original Complaint, seeking relief against Defendant under the TCPA and Texas Business & Commerce Code Sections 305.053 ("§ 305.053") and 302.101 ("§ 302.101").  *See id.*  He requested monetary damages in the amount of $1,500 per call for violations of 47 U.S.C. § 227(b); $1,500 per call for violations of 47 U.S.C.

§ 227(c); and $5,000 per call for violations of § 302.101, among other damages. *Id.* at ¶¶ 95, 101, 135.

Upon Plaintiff's request, the Clerk of the Court issued a summons for Defendant. Summons in a Civil Action, ECF No. 2.  Plaintiff filed proof of executed summons, which indicated that the summons was delivered by hand on September 25, 2023, to Gary W. Craig, the registered agent for Defendant, at 2062 Valley Road, Costa Mesa, CA 92627.  Proof of Service, ECF No. 3.  Defendant had twenty-one days from service to answer, Fed. R. Civ. P. 12(a)(1)(A)(i), which meant that Defendant's answer was due by October 16, 2023.  On October 31, after Defendant failed to timely answer or otherwise appear, Plaintiff requested entry of default against Defendant.  Req. Entry Default, ECF No. 4.  On the same day, the Clerk of the Court entered default against Defendant.  Entry Default, ECF No. 5.  Plaintiff filed the current Motion for Default Judgment on December 5, 2023.  Pl.'s Mot. Default J., ECF No. 9.  Defendant has not responded to the Motion or otherwise appeared in this matter.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs entry of default and default judgment.  In ruling on a motion for default judgment, courts generally analyze the following three issues: (1) the procedural propriety of default judgment, (2) the substantive merits of the plaintiff's claims, and (3) the appropriate form of relief.  *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008); *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813–14 (N.D. Tex. 2015).

Procedurally, a defendant defaults if he or she fails to timely respond to the complaint.  Fed. R. Civ. P. 55(a); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  When default is shown "by affidavit or otherwise," the clerk of the court "must enter the party's default."  Fed. R.

Civ. P. 55(a).  After entry of default, the plaintiff may seek an entry of default judgment.  Fed. R. Civ. P. 55(b).  Default judgment is "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes omitted).  In deciding whether default judgment is procedurally proper, the court considers the following factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("*Lindsey* factors").

Next, as to the merits of a motion for default judgment, the court accepts the plaintiff's well-pleaded allegations as true, except regarding damages.  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *U.S. for Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  Default judgment is appropriate only if the pleadings provide a "sufficient basis" for the judgment.  *Nishimatsu*, 515 F.2d at 1206.  In other words, "a defendant's default does not in itself warrant the court in entering a default judgment. . . .  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *Id.*  Courts apply the Federal Rule of Civil Procedure 8 standard for the sufficient basis inquiry.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see also id.* n.3 ("Although most cases addressing Rule 8 arise in the context of a Rule 12(b)(6) motion to dismiss, . . . we decline to import Rule 12 standards into the default-judgment context.").

Finally, as to appropriate form of relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The court may conduct a hearing on a default judgment motion, as needed, to: "(A) conduct an accounting; (B)

determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).  A hearing on damages is required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## IV.   DISCUSSION

### A. Jurisdiction and Venue

The Court first confirms that it has jurisdiction to hear this matter.  *See Drew v. Lexington Consumer Advoc.*, No. 16-CV-00200-LB, 2016 WL 9185292, at *2 (N.D. Cal. Aug. 11, 2016) ("Before entering default judgment, a court must determine whether it has subject-matter jurisdiction over the action and personal jurisdiction over the defendant."), *report and recommendation adopted sub nom. Drew v. Lexington Consumer Advoc., LLC*, No. C 16-00200 SBA, 2016 WL 9223901 (N.D. Cal. Sept. 2, 2016).  The Court has subject-matter jurisdiction over Plaintiff's TCPA claims because the TCPA is a federal statute.  *See* 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Plaintiff's claims under the Texas Business & Commerce Code. *See* 28 U.S.C. § 1367(a).

There are two types of personal jurisdiction: general and specific.  *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017).  A state has general personal jurisdiction over a corporation if the corporation "is fairly regarded as at home" in the state.  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Generally, a corporation is "at home" only in its place of incorporation or principal place of business.  *Frank v. P.N.K. (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020).  Plaintiff alleges that Defendant "is a corporation organized and existing under the laws of California."  Pl.'s

Original Compl. ¶ 2.  As a result, this Court cannot exercise general personal jurisdiction over Defendant.

For specific jurisdiction, the suit must arise out of the defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  "[A] federal court may assert personal jurisdiction if the state long-arm statute permits jurisdiction and the exercise of such jurisdiction would not violate due process. . . .  Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019) (internal quotes and citation omitted).  The analysis requires addressing whether the defendant "purposely availed himself of Texas's benefits and protections" and whether exercising personal jurisdiction over the defendant in Texas would not "offend traditional notions of fair play and substantial justice." *Id.* (citation omitted).

"A corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 768 (S.D. Tex. 2022) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014)).  An agency relationship is established when one party, the principal, "manifests assent" to another party, the agent, "that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Bradley v. DentalPlans.com*, 617 F. Supp. 3d 326, 338–39 (D. Md. 2022) (citation omitted).  "The 'essential element' of an agency relationship is the 'principal's control over the agent's actions.' . . .  The relevant inquiry in TCPA cases is whether the principal controlled—or had the right to control—the 'manner and means' of the telemarketing campaign." *Id.* at 339 (citation omitted).

In his complaint, Plaintiff alleges that Defendant "knowingly and actively directed the alleged phone calls" and "instructed [Empower People] on what states to call, what hours to call,

and what to say when the phone calls were answered."  Pl.'s Original Compl. ¶¶ 65–66.  Plaintiff also alleges that Defendant "directed [Empower People] on the qualifications required for each customer and supplied [Empower People] with the hardware and software use to enter those qualifications."  *Id.* at ¶ 67.  He adds that Defendant "had day-to-day control over the actions of its telemarketers" and "gave interim instructions to [Empower People]."  *Id.* at ¶¶ 70–71.  These statements, taken as true, are enough to establish that Empower People was operating as Defendant's agent.  Therefore, Empower People's actions are imputed to Defendant.  *See Callier v. SunPath Ltd.*, No. EP-20-CV-00106-FM, 2020 WL 10285659, at *3 (W.D. Tex. Aug. 10, 2020) ("[T]he authorized actions of an agent may be imputed to that agent's principal.").  This means that Empower People's telemarketing calls constitute Defendant's minimum contacts with Texas.

Notions of fair play and substantial justice would not be offended by the Court's exercise of personal jurisdiction.  The five factors the Fifth Circuit has identified when considering whether it is reasonable to exercise personal jurisdiction are:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies.

*Rogers*, 636 F. Supp. 3d at 771.  The court in *Rogers* concluded that its exercise of personal jurisdiction over a TCPA defendant was reasonable because "Texas has an interest in litigation enforcing its telephone consumer protection laws, and [the] [p]laintiff would be inconvenienced if required to litigate his claims in [the defendant's] preferred state."  Additionally, the *Rogers* court held that "enforcement of state telephone consumer protection laws could be frustrated if plaintiffs as a group were forced to travel to the defendants' preferred state."  *Id.*  The same considerations

apply here, and Defendant has not made a case for why personal jurisdiction would not be reasonable.

Lastly, Defendant was properly served.  A corporation can be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B). Plaintiff served a copy of the summons and complaint on the individual listed on California's Secretary of State website as Defendant's registered agent at the address also listed on the website.[1] *See* Proof of Service.  Additionally, a corporation can be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Service may be carried out on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  "Texas law authorizes service on a corporation through the corporation's registered agent, president, or vice president."  *Lawson v. GEICO*, No. 5:15–CV–481, 2015 WL 6161247, at *2 (W.D. Tex. Oct. 19, 2015).  Thus, the Court may exercise personal jurisdiction over Defendant.

Venue is proper in this District because it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2); *see* Pl.'s Original Compl. ¶ 11.  Plaintiff resides in the Western District of Texas and received all of the calls while in this District.  *Id.* at ¶ 1.

### B.  Procedural Propriety

Default judgment against Defendant is procedurally appropriate.  There are no material issues of fact at issue in the case, given that Defendant has defaulted and filed no responsive

---

[1] *Business Search*, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (search "United Tax Defense LLC") (last visited Dec. 11, 2023).

pleadings.  *See Cunningham v. Greenstar Cap. Sols., LLC*, No. 4:18-CV-000161-ALM-CAN, 2018 WL 4572711, at *3 (E.D. Tex. Aug. 1, 2018) ("When a defendant defaults, he admits to the plaintiff's well-pleaded allegations of fact, and therefore, there are no material issues of fact.") (citation omitted), *report and recommendation adopted*, No. 4:18-CV-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018).  Plaintiff has been prejudiced and will continue to be prejudiced by the delay in this case due to Defendant's failure to timely answer and defend the case.  The grounds for default are clearly established.  As discussed, Defendant failed to timely respond to the Complaint, Plaintiff moved for default, and the Clerk of the Court entered default against Defendant.  The District Court ordered Plaintiff to move for default judgment "on or before December 5, 2023."  Order, ECF No. 7.  Plaintiff certified that he filed his Motion for Default Judgment on December 5.  Pl.'s Mot. Default J. 13.  There is no evidence that Defendant's default was caused by a good faith mistake or excusable neglect.  Default judgment against Defendant would not be unduly harsh, given that Defendant has been given notice and opportunity to respond to this action.  Lastly, there is not any basis on which a court would think itself obliged to set aside Defendant's default.  Thus, all the *Lindsey* factors are satisfied.

### C.  Substantive Merits

1.  <u>Violation of 47 U.S.C. § 227(b)(1)(A)(iii)</u>

47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any . . . cellular telephone service."  Plaintiff has alleged that five phone calls were made to his cellular phone. Pl.'s Original Compl. ¶¶ 32, 43.  Plaintiff has asserted that he "never gave his prior express written consent" to receive any of these calls.  *Id.* at ¶ 44.  He "never had any business relationship with

Defendant and never knew who Defendant was prior to the calls being made to his personal cell phone." *Id.* at ¶ 45.  Plaintiff also stated that the five voice messages he received on his phone were "artificial or prerecorded" and all used the same words.  *Id.* at ¶ 32.  Plaintiff thus has adequately pleaded all the elements of the claim and established a sufficient basis for relief.

   2.   <u>Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)</u>

   47 U.S.C. § 227(c)(5) provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action "in an appropriate court."  The "regulations prescribed under this subsection" are codified at 47 U.S.C. § 64.1200.  47 C.F.R. § 64.1200(c)(2) makes it an offense to "initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

   Courts within the Fifth Circuit have come out both ways on the question of whether a cellular telephone can be considered a residential telephone for purposes of 47 C.F.R. § 64.1200. *Compare Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, at *5–6 (W.D. Tex. May 10, 2021) *with Strange v. ABC Co.*, No. CV 19-1361, 2021 WL 798870, at *3 (W.D. La. Mar. 1, 2021).  However, there is no "binding precedent that would foreclose Plaintiff's allegations, as pleaded, under the TCPA."  *Myrick v. Adapthealth, LLC*, No. 6:22-CV-00484-JDK, 2023 WL 5162396, at *2 (E.D. Tex. June 26, 2023), *report and recommendation adopted*, No. 6:22-CV-484-JDK, 2023 WL 4488848 (E.D. Tex. July 12, 2023).   Further, the Federal Communications Commission has arguably "extended the full coverage of the TCPA to cell phones."  *Id.* at *3 (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14039, 2003 WL 21517853 (FCC June 26, 2003)).  This Court agrees with other courts in the Fifth Circuit that

have held that a cellular telephone number qualifies as a residential number under the TCPA as long as the plaintiff alleges sufficient facts to make it clear that his cellular telephone is used for residential purposes.  *See id.*; *Strange*, 2021 WL 798870, at *4; *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *3 (N.D. Tex. Feb. 24, 2022).

Plaintiff has confirmed that his cellular phone is a residential number.  Pl.'s Original Compl. ¶ 91.  He asserts that his cellular phone is used "for personal, family, and household use" and is the primary way that he contacts "friends and family."  *Id.*  He also states that this phone is "registered in his personal name" and paid for "from his personal accounts."  *Id.*  The phone was registered on the national do-not-call registry during the relevant time period.  Pl.'s Original Compl. ¶¶ 24–25.  Plaintiff has also stated that he received more than one call in a 12-month period, and all the calls were on behalf of Defendant.  *Id.* at ¶¶ 41, 43.  As such, Plaintiff has pleaded enough to establish a sufficient basis for default judgment for the eight calls received.[2]

3.  <u>Violation of Texas Business & Commerce Code § 302.101</u>

Section 302.101 makes it a violation for "a seller" to "make a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101.  Other courts in this Circuit have determined that the federal common law principles of agency apply here, too, and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller.  *See Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-CV-00121-JCB-KNM, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022) (stating that the plaintiff had "presented sufficient factual allegations" for the court "to infer the existence of a principal-

---

[2] "Text messages are 'calls' subject to the TCPA, as previously determined by the Commission."  *In re Rules and Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7965, 2015 WL 4387780 (FCC July 10, 2015).

agent relationship" between the telemarketer and the defendant and thus impute the telemarketer's conduct to the defendant), *report and recommendation adopted*, No. 6:22-CV-00121, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022); *Salaiz v. Beyond Fin., LLC*, No. EP-23-CV-6-KC, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (finding that the plaintiff had "plausibly alleged that [the] [d]efendant effected or attempted to effect the thirteen calls [the] [p]laintiff received by hiring telemarketers to make those calls.").

Plaintiff asserts that he is a resident of Texas. Pl.'s Original Compl. ¶ 1. Defendant is a seller, since Defendant ordered that the calls be made on Defendant's own behalf, in order to promote its financial assistance services. *See* Tex. Bus. & Com. Code § 302.001(5) ("'Seller' means a person who makes a telephone solicitation on the person's own behalf."). Plaintiff also asserts that Defendant is not registered with the Texas Secretary of State, as required by § 302.101. Pl.'s Original Compl. ¶ 49. As a result, Plaintiff has pleaded a sufficient basis to establish a claim.

### D. Entitlement to Damages

If no hearing regarding the amount of damages is held, then damages must be proven "by detailed affidavits establishing the necessary facts." *United Artists Corp.*, 605 F.2d at 857. No hearing has been held on damages here. Even so, the amount of damages available to Plaintiff is capable of mathematical calculation, and Plaintiff has provided these calculations in his Motion for Default Judgment and attached affidavit. *See* Pl.'s Mot. Default J.; Decl. Manuel Guadian Supp. Mot. Default J, ECF No. 10. Plaintiff seeks damages in the amount of $31,977.00, based on $500 each for 5 violations of § 227(b), $500 each for 8 violations of § 227(c), and $5,000 each for 5 violations of § 302.101, along with $402 in filing fees and $75 in service fees. Pl.'s Mot. Default J. 12; Decl. Manuel Guadian Supp. Mot. Default J. ¶¶ 5–8.

47 U.S.C. §§ 227(b)(3) and 227(c)(5) authorize private rights of action under the TCPA. Under both subsections, an individual can file suit to recover his actual monetary losses or to receive $500 in damages for each violation.  47 U.S.C. § 227(b)(3)(B); 47 U.S.C. § 227(c)(5)(B).[3] One call can violate multiple subsections of the TCPA and thus be subject to multiple awards of damages.  *See Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105–06 (11th Cir. 2015) (holding that one fax violated multiple subsections of the TCPA and the plaintiff was entitled to damages of $1,000 as a result).  Through the allegations in the Original Complaint, Plaintiff has shown that Defendant is liable for five phone calls that violated § 227(b) and eight calls that violated § 227(c).  As such, Plaintiff is entitled to $6,500.

Plaintiff also requests $25,000 for Defendant's five[4] violations of § 302.101.  Pl.'s Mot. Default J. 12; Dec. Manuel Guadian Supp. Mot. Default J. ¶ 7.  A person or entity who violates Chapter 302 of the Texas Business & Commerce Code ("Chapter 302") faces "a civil penalty of not more than $5,000 for each violation." Tex. Bus. & Com. Code § 302.302(a).  There is a private right of action available to enforce the provisions of Chapter 302.  Tex. Bus. & Com. Code § 302.303(b); *see also Auguston v. Nat'l Admin. Serv. Co.*, No. 4:21-CV-819-ALM-KPJ, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023) ("While Texas Business and Commerce Code Section 302.101 itself does not provide a private right of action, Section 302.303 provides the plaintiff a private right of action to enforce violations of Section 302.101."), *report and recommendation adopted*, No. 4:21-CV-819-ALM-KPJ, 2023 WL 1802389 (E.D. Tex. Feb. 7, 2023).  Other courts

---

[3] Both subsections also contain provisions allowing for treble damages if the defendant's violation is willful and knowing.  47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).  Plaintiff addresses these provisions but does not actually request treble damages in the Motion.  Pl.'s Mot. Default J. 10–12.  Since Plaintiff does not seek treble damages, the Court will not address whether he is entitled to them.

[4] Section 302.101 does not apply to text messages, "[u]nder a plain reading of the [Texas Business and Commerce] Code." *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 2992881, at *4 (N.D. Tex. July 28, 2022). Plaintiff properly does not seek damages under § 302.101 for the three text messages he received from Defendant.

in this Circuit have approved damages under both the TCPA and Chapter 302.  *See Thomas v. Zenith Solar, LLC*, No. MO:22-CV-00047-DC-RCG, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022) (granting the plaintiff $1,500 under the TCPA and $5,000 under Chapter 302 for each violation), *report and recommendation adopted*, No. MO:22-CV-00047-DC, 2022 U.S. Dist. LEXIS 202853 (W.D. Tex. Aug. 24, 2022); *Thompson v. Dealer Renewal Servs.*, No. 4:21-CV-0467-P, 2021 WL 5416605, at *3 (N.D. Tex. Nov. 18, 2021) (granting the plaintiff damages under 47 U.S.C. § 227(b), 47 U.S.C. § 227(c), and Chapter 302).  Plaintiff is entitled to $25,000 for five violations of § 302.101.

Lastly, Plaintiff seeks a total of $477 in filing and service fees.  Pl.'s Mot. Default J. 11. Plaintiff is allowed to recoup "all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees." Tex. Bus. & Com. Code § 302.302(d).  The category of "court costs" would include Plaintiff's filing fee.  The fee Plaintiff paid for service of process would also be included.  Since this is a Texas statute, the Court looks to Texas law, which considers fees for service of process to be court costs that may be included in a judgment.  Michol O'Connor, *O'Connor's Texas Causes of Action* Ch. 44, § 2.3.1(2) (2024 ed.) ("Service fees are taxable court costs. . . .  Service fees are recoverable regardless of whether the service was made by a public officer or a private process server."); *see also Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-cv-808-RCL, 2021 WL 3137421, at *16 (W.D. Tex. Feb. 22, 2021) ("If Texas law controls, then the sums expended on private process servers are recoverable.").  As a result, Plaintiff is entitled to recover $477 in total in court costs.

## V.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff Manuel Guadian's Motion for Default Judgment be **GRANTED** and that he be awarded $31,977.00 as damages for Defendant's violations of 47 U.S.C. § 227(b), 47 U.S.C. § 227(c), and Tex. Bus. & Com. Code § 302.101.

**SIGNED** this 12th day of January, 2024.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**